UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

T.Y.,[1]

          Plaintiff,

   v.

KILOLO KIJAKAZI,

          Defendant.

Case No.  20-cv-07519-TSH

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 25, 27

## I.    INTRODUCTION

Plaintiff T.Y. moves for summary judgment to reverse the decision of Defendant Kilolo Kijakazi, Acting Commissioner of Social Security ("Commissioner"), denying Plaintiff's claim for disability benefits under the Social Security Act, 42 U.S.C. § 401 et seq.  ECF No. 25. Defendant cross-moves to affirm.  ECF No. 27.  Pursuant to Civil Local Rule 16-5, the matter is submitted without oral argument.  Having reviewed the parties' positions, the Administrative Record ("AR"), and relevant legal authority, the Court hereby **GRANTS IN PART** and **DENIES IN PART** Plaintiff's motion and **DENIES** Defendant's cross-motion for the following reasons.[2]

## II.    PROCEDURAL HISTORY

On April 3, 2017, Plaintiff filed an application for Supplemental Security Income benefits with an amended disability onset date of April 4, 2017.  AR 18.  The application was initially denied on July 7, 2017, and again on reconsideration on September 13, 2017.  AR 18.  An

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c).  ECF Nos. 7, 8.

Administrative Law Judge ("ALJ") held a hearing on and issued an unfavorable decision on January 17, 2020.  AR 18-30.  The Appeals Council denied Plaintiff's request for review on August 26, 2020.  AR 2.  Plaintiff now seeks review pursuant to 42 U.S.C. § 405(g).

### III.   ISSUES FOR REVIEW

Plaintiff raises two issues on appeal:

(1)   the ALJ erred in evaluating the medical opinion evidence, including opinions from:

      a.   examining psychologist, Dr. Katherine Wiebe;

      b.   examining psychologist, Dr. Mindy Pardoll; and

      c.   treating psychologist, Dr. Imme Staeffler; and

(2)   the ALJ erroneously assessed Plaintiff's RFC.

### IV.   STANDARD OF REVIEW

42 U.S.C. § 405(g) provides this Court's authority to review the Commissioner's decision to deny disability benefits, but "a federal court's review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015).  "An ALJ's disability determination should be upheld unless it contains legal error or is not supported by substantial evidence." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (citations omitted). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019).  It means "more than a mere scintilla, but less than a preponderance" of the evidence. *Garrison*, 759 F.3d at 1009 (citation omitted).

The Court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion, and may not affirm simply by isolating a specific quantum of supporting evidence." *Id.* (citation omitted).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Id.* at 1010 (citation omitted).  If "the evidence can reasonably support either affirming or reversing a decision," the Court may not substitute its own judgment for that of the ALJ." *Id.* (citation omitted).

Even if the ALJ commits legal error, the ALJ's decision will be upheld if the error is

United States District Court
Northern District of California

1   harmless. *Molina v. Astrue*, 674 F.3d 1104, 1111, 1115 (9th Cir. 2012), *superseded on other*

2   *grounds by* 20 C.F.R. § 404.1502(a). "[A]n error is harmless so long as there remains substantial

3   evidence supporting the ALJ's decision and the error does not negate the validity of the ALJ's

4   ultimate conclusion." *Id.* at 1115. But "[a] reviewing court may not make independent findings

5   based on the evidence before the ALJ to conclude that the ALJ's error was harmless." *Brown-*

6   *Hunter*, 806 F.3d at 492. The Court is "constrained to review the reasons the ALJ asserts." *Id.*

7                                    **V.    DISCUSSION**

8   **A.    Framework for Determining Whether a Claimant Is Disabled**

9           A claimant is considered "disabled" under the Social Security Act if two requirements are

10  met. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the

11  claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of

12  any medically determinable physical or mental impairment which can be expected to result in

13  death or which has lasted or can be expected to last for a continuous period of not less than 12

14  months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe

15  enough that the claimant is unable to perform previous work and cannot, based on age, education,

16  and work experience "engage in any other kind of substantial gainful work which exists in the

17  national economy." *Id.* § 423(d)(2)(A).

18          The regulations promulgated by the Commissioner of Social Security provide for a five-

19  step sequential analysis to determine whether a Social Security claimant is disabled. 20 C.F.R. §

20  404.1520. The claimant bears the burden of proof at steps one through four. *Ford v. Saul*, 950

21  F.3d 1141, 1148 (9th Cir. 2020) (citation omitted).

22          At step one, the ALJ must determine if the claimant is presently engaged in a "substantial

23  gainful activity," 20 C.F.R. § 404.1520(a)(4)(i), defined as "work done for pay or profit that

24  involves significant mental or physical activities." *Ford*, 950 F.3d at 1148 (internal quotations and

25  citation omitted). Here, the ALJ determined Plaintiff had not performed substantial gainful

26  activity since April 3, 2017. AR 20.

27          At step two, the ALJ decides whether the claimant's impairment or combination of

28  impairments is "severe," 20 C.F.R. § 404.1520(a)(4)(ii), "meaning that it significantly limits the

*United States District Court*
*Northern District of California*

3

1   claimant's 'physical or mental ability to do basic work activities.'" *Ford*, 950 F.3d at 1148

2   (quoting 20 C.F.R. § 404.1522(a)).  If no severe impairment is found, the claimant is not disabled.

3   20 C.F.R. § 404.1520(c).  Here, the ALJ determined Plaintiff had the following severe

4   impairments: migraine, anxiety, and alcohol abuse.  AR 20.

5          At step three, the ALJ evaluates whether the claimant has an impairment or combination of

6   impairments that meets or equals an impairment in the "Listing of Impairments" (referred to as the

7   "listings").  *See* 20 C.F.R. § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1.  The listings

8   describe impairments that are considered "to be severe enough to prevent an individual from doing

9   any gainful activity."  *Id.* § 404.1525(a).  Each impairment is described in terms of "the objective

10  medical and other findings needed to satisfy the criteria of that listing."  *Id.* § 404.1525(c)(3).

11  "For a claimant to show that his impairment matches a listing, it must meet all of the specified

12  medical criteria.  An impairment that manifests only some of those criteria, no matter how

13  severely, does not qualify."  *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) (footnote omitted).  If a

14  claimant's impairment either meets the listed criteria for the diagnosis or is medically equivalent

15  to the criteria of the diagnosis, he is conclusively presumed to be disabled, without considering

16  age, education, and work experience.  20 C.F.R. § 404.1520(d).  Here, the ALJ determined

17  Plaintiff did not have an impairment or combination of impairments that met the listings.  AR 22-

18  23.

19         If the claimant does not meet or equal a listing, the ALJ proceeds to step four and assesses

20  the claimant's residual functional capacity ("RFC"), defined as the most the claimant can still do

21  despite their imitations (20 C.F.R. § 404.1545(a)(1)), and determines whether they are able to

22  perform past relevant work, defined as "work that [the claimant has] done within the past 15 years,

23  that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do

24  it."  20 C.F.R. § 404.1560(b)(1).  If the ALJ determines, based on the RFC, that the claimant can

25  perform past relevant work, the claimant is not disabled.  *Id.* § 404.1520(f).  Here, the ALJ

26  determined Plaintiff had the RFC to:  "perform medium work . . .  except occasional extreme heat;

27  occasional loud noise and vibration; occasional unprotected heights and moving mechanical parts;

28  simple, routine tasks; occasional interaction with coworkers and the public."  AR 24.  Based on

1   this RFC, the ALJ determined Plaintiff could not perform past relevant work.  AR 29.

2          At step five, the burden shifts to the agency to prove that "'the claimant can perform

3   a significant number of other jobs in the national economy.'"  *Ford*, 950 F.3d at 1149

4   (quoting *Thomas v. Barnhart*, 278 F.3d 947, 955 (9th Cir. 2002)).  To meet this burden, the

5   ALJ may rely on the Medical-Vocational Guidelines (commonly known as "the grids"), 20

6   C.F.R. Pt. 404 Subpt. P, App. 2,[3] or on the testimony of a vocational expert.  *Ford*, 950 F.3d

7   at 1149 (citation omitted).  "[A] vocational expert or specialist may offer expert opinion

8   testimony in response to a hypothetical question about whether a person with the physical

9   and mental limitations imposed by the claimant's medical impairment(s) can meet the

10  demands of the claimant's previous work, either as the claimant actually performed it or as

11  generally performed in the national economy."  20 C.F.R. § 404.1560(b)(2).  An ALJ may

12  also use other resources such as the Dictionary of Occupational Titles ("DOT").[4]  *Id.*  Here,

13  relying on the opinion of a vocational expert ("VE"), the ALJ concluded that an individual

14  with Plaintiff's RFC could perform other jobs existing in the economy, including machine

15  packager, automotive detailer, and industrial cleaner.  AR 30.  The ALJ thus concluded that

16  Plaintiff was not disabled.  AR 30.

**B.        Medical Opinions**

**1.        Legal Standards**

For benefits applications filed after March 27, 2017, the Social Security Administration's

[3] The grids "present, in table form, a short-hand method for determining the availability and numbers of suitable jobs for a claimant." *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114-15 (9th Cir. 2006) (citing *Tackett*, 180 F.3d at 1101).  They consist of three tables, for sedentary work, light work, and medium work, and a claimant's place on the applicable table depends on a matrix of four factors: a claimant's age, education, previous work experience, and physical ability.  *Id.* "For each combination of these factors, [the grids] direct a finding of either 'disabled' or 'not disabled' based on the number of jobs in the national economy in that category of physical-exertional requirements."  *Id.*

[4] The Dictionary of Occupational Titles by the United States Department of Labor, Employment & Training Administration, may be relied upon "in evaluating whether the claimant is able to perform work in the national economy."  *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990).  The DOT classifies jobs by their exertional and skill requirements and may be a primary source of information for the ALJ or Commissioner.  20 C.F.R. § 404.1566(d)(1).  The "best source for how a job is generally performed is usually the Dictionary of Occupational Titles."  *Pinto v. Massanari*, 249 F.3d 840, 846 (9th Cir. 2001).

1    regulations and several Social Security Rulings regarding the evaluation of medical evidence have

2    been amended.  Prior to the current regulations, Ninth Circuit law held that "[t]he medical opinion

3    of a claimant's treating physician is given 'controlling weight' so long as it 'is well-supported by

4    medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the

5    other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664,

6    675 (9th Cir. 2017) (quoting 20 C.F.R. § 404.1527(c)(2)).  Accordingly, an ALJ was required to

7    provide clear and convincing reasons to reject a treating physician's uncontradicted opinion or to

8    provide specific and legitimate reasons to reject a treating physician's contradicted opinion.  *See*

9    *Trevizo*, 871 F.3d at 675.

10          However, under the current regulations, the Commissioner no longer assigns presumptive

11   weight to a treating physician's opinion, and the Ninth Circuit recently held that the new

12   regulations "displace [the Ninth Circuit's] longstanding case law" requiring an ALJ to articulate

13   "specific and legitimate reasons" for rejecting a treating physician's opinion where the opinion is

14   contradicted by other medical opinions.  *Woods v. Kijakazi,* 32 F.4th 785, 787 (9th Cir. 2022).

15          "The revised regulations recognize that a medical source's relationship is still relevant

16   when assessing the persuasiveness of the source's opinion."  *Id*. at 792.  "Although the regulations

17   eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight'

18   to a medical opinion, the ALJ must still 'articulate how [they] considered the medical opinions'

19   and 'how persuasive [they] find all of the medical opinions.'" *Christopher Charles A. v. Comm'r*

20   *of Soc. Sec.*, No. C19-5914-MLP, 2020 WL 916181, at *2 (W.D. Wash. Feb. 26, 2020) (citing 20

21   C.F.R. §§ 404.1520c(a) and (b), 416.920c(a) and (b)(1)).  As with all other determinations made

22   by the ALJ, the ALJ's persuasiveness explanation must be supported by substantial evidence.  *See*

23   *Woods,* 2022 WL 1195334, at *1; *see also Patricia F. v. Saul*, No. C19-5590-MAT, 2020 WL

24   1812233, at *4 (W.D. Wash. Apr. 9, 2020) (citing 82 Fed. Reg. at 5852) (finding that, under the

25   new regulations, "[t]he Court must . . . continue to consider whether the ALJ's analysis has the

26   support of substantial evidence").

27          Under the current regulations, the Commissioner must evaluate the persuasiveness of all

28   medical opinions based on (1) supportability; (2) consistency; (3) relationship with the claimant;

(4) specialization; and (5) other factors, such as "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(a), (c)(1)-(5), § 416.920c(a), (c)(1)-(5). The two "most important factors" for determining the persuasiveness of medical opinions are "consistency" and "supportability." *Woods*, 32 F.4th at 791 (quoting 20 C.F.R. § 404.1520c(a)). When evaluating medical opinions, the Commissioner "may, but [is] not required to," explain how the Social Security Administration considered the remaining factors listed in paragraphs (c)(3) through (c)(5) of the regulations, as appropriate. 20 C.F.R. § 404.1520c(b)(2), § 416.920c(b)(2); *but see Woods,* 32 F.4th at 792 (discussing 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3)) (noting that when "'two or more medical opinions . . . about the same issue are . . . equally well supported . . . and consistent with the record. . . but are not exactly the same,' . . . the ALJ 'will articulate how [the agency] considered the other most persuasive factors'").

With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." 20 C.F.R. § 416.920c(c)(2).

### 2.   Dr. Katherine Wiebe

On November 6, 2019, approximately two weeks prior to Plaintiff's hearing before the ALJ, Dr. Wiebe conducted a psychological evaluation of Plaintiff during which she interviewed Plaintiff and administered several cognitive and psychological tests. AR 625-42. Dr. Wiebe diagnosed Plaintiff with major depressive disorder, post-traumatic stress disorder ("PTSD"), unspecified personality disorder, unspecified neurocognitive disorder, cannabis use disorder, and alcohol use disorder. AR 638-39. She opined that Plaintiff's "psychiatric and cognitive functioning impairments . . . interact with and affect her ability to attend to, remember, and follow

1   through with directions and tasks, especially with the demands of an employment situation." AR

2   638.  According to Dr. Wiebe, Plaintiff's "cognitive functioning problems [are] likely associated

3   with her psychiatric disorder symptoms including unresolved trauma history, and possible effects

4   from [a] history of head injuries and substance use." AR 638.

5        Dr. Wiebe also administered several tests, including the Barona IQ Estimate, the

6   Repeatable Battery for the Assessment of Neuropsychological Status ("RBANS"), the Mini-

7   Mental Status Exam ("MMSE"), the Beck Depression Inventory ("BDI-III"), the Posttraumatic

8   Checklist for DSM 5 ("PCL-5"), the Millon Clinical Multiaxial Inventory-IV ("MCMI-IV"), the

9   Trail Making A and B test, and the Mental Status/Psychiatric Symptoms Sheet. AR 629-30.

10  Based on the test results, Dr. Wiebe opined that Plaintiff's overall intellectual functioning was in

11  the average range. AR 630.

12       Dr. Wiebe found that Plaintiff's attention and concentration were mildly to moderately

13  impaired based on the results of several of the tests, including the MMSE, the Trail Making A, and

14  the RBANS. AR 630. She assessed Plaintiff with moderate to severe impairments in terms of her

15  memory functioning, based on the RBANS and the MMSE tests. AR at 630-31.

16       The BDI test results, along with Dr. Wiebe's clinical interview, suggested that Plaintiff

17  suffered from severe depression. AR 631. Dr. Wiebe further noted that Plaintiff self-reported

18  several recent symptoms associated with PTSD on the PCL-5 checklist. AR 631. The MCMI test

19  for psychiatric functioning revealed that Plaintiff was "experiencing a severe mental disorder,"

20  and that she "has problems with mood including recurrent, severe depression and delusional

21  symptoms." AR 634, 637.

22       In terms of alcohol abuse, Dr. Wiebe found that "[r]ecurrent periods of alcohol abuse

23  appear to be a major problem for [Plaintiff]."[5] AR 637. In support, Dr. Wiebe noted that:

24  "[a]nxious, lonely, and socially apprehensive, [Plaintiff] likely finds drinking to be a useful

25  lubricant that reduces her tensions and fears." AR 637. Among other things, Dr. Wiebe further

26

27  _____

28  [5] Plaintiff mistakenly argues that the ALJ erred because Dr. Wiebe never stated that her alcohol
    abuse was a "major problem." *See* Pl. Amended Reply at 7 (asserting that "Dr. Wiebe made no
    such statement.").

United States District Court
Northern District of California

1 noted that alcohol "enhanced [Plaintiff's] self-esteem," resolved "psychic pain," and "erase[d] the

2 pressing awareness of [Plaintiff's] troubled existence."  AR 637.

3    Functionally, Dr. Wiebe concluded that Plaintiff had mild to moderate limitations in terms

4 of her ability to understand, remember, and carry out very short and simple instructions.  AR 642.

5 She found that Plaintiff possessed a moderate limitation in her ability to maintain attention and

6 concentration for two-hour segments.  AR 642.  Dr. Wiebe opined that Plaintiff was moderately to

7 markedly limited in six categories, including her ability to: (1) understand, remember, and carry

8 out detailed instructions; (2) perform at a consistent pace without an unreasonable number and

9 length of rest periods; (3) get along and work with others; (4) interact appropriately with the

10 general public; (5) accept instructions and respond appropriately to criticism from supervisors; and

11 (6) maintain regular attendance and be punctual within customary, usually strict tolerances.  AR

12 642.  Finally, Dr. Wiebe concluded that Plaintiff had marked limitations in her ability to respond

13 appropriately to changes in a routine work setting and deal with normal stressors, and in her ability

14 to complete a normal workday and workweek without interruptions from psychologically based

15 symptoms.  AR 642.

16    Ultimately, Dr. Wiebe opined that "[d]ue to [Plaintiff's] long[-]term cognitive and severe

17 psychiatric disorder symptoms, she would unlikely be able to maintain a regular job for at least a

18 year *even if she does not use any substances in the future*."  AR 638 (emphasis added).

19    The ALJ found Dr. Wiebe's opinion only "somewhat persuasive" for three reasons.  AR

20 26.  First, the ALJ noted that Dr. Wiebe's testing failed to "separate out the impact of [her] alcohol

21 use on her functioning."  AR 26.  Second, the ALJ found that Dr. Wiebe's opinion was

22 "contradicted by [Plaintiff's] longitudinal medical record showing that [Plaintiff] typically had

23 intact concentration, memory, and behavior."  AR 26.  Finally, the ALJ stated that Dr. Wiebe's

24 testing did not support the severe or marked limitations; nor did it "indicate which limitations are

25 attributable to substances."  AR 26.

26        **a.    Dr. Wiebe's Failure to Segregate Impact of Alcohol Abuse**

27    Plaintiff argues that "there is a fundamental conflict . . . between the ALJ's unequivocal

28 finding [at step two] that drug abuse and alcoholism . . . are not material to the disability

United States District Court
Northern District of California

1    determination because [she] 'would not be disabled even with the substance abuse' and the ALJ's

2    later discrediting of psychological opinion evidence on the basis that it does not 'separate out' the

3    impact of DAA [drug abuse and alcoholism] from [her] underlying mental health diagnosis." Pl.

4    Mot. Summ. J. at 7 (discussing AR 22, 26). The Commissioner counters that any error in

5    discounting Dr. Wiebe's opinion on this basis was harmless because the ALJ offered additional

6    reasons that supported her determination that the opinion was only "somewhat persuasive." Def.

7    Cross-Mot. Summ. J. at 7.

8           The Court agrees with Plaintiff that this was an improper basis for discounting Dr. Wiebe's

9    opinion. The Ninth Circuit has ruled that when a claimant, such as Plaintiff, has a history of drug

10   or alcohol use, an "ALJ must first conduct the five-step inquiry without separating out the impact

11   of alcoholism or drug addiction." *Bustamante v. Massanari*, 262 F.3d 949, 955 (9th Cir. 2001)

12   (interpreting 20 C.F.R. §§ 404.1535, 416.935); *see also* Social Security Ruling ("SSR") 13-2p,

13   2013 WL 621536, at *1 (Feb. 20, 2013). If, considering all of the claimant's medically

14   determinable impairments, the ALJ determines that the claimant is disabled, and there is medical

15   evidence showing DAA, then the ALJ must determine whether the DAA is "material" to the

16   finding that the claimant is disabled, i.e., whether the claimant would still be found disabled if

17   they stopped using drugs or alcohol. *Id.* If, however, the ALJ concludes that the claimant's

18   combined impairments – including the DAA – are not disabling, the inquiry ends, and the ALJ

19   need not determine DAA materiality. SSR 13-2p, 2013 WL 621536, at *5-6; *Bustamante*, 262

20   F.3d at 955 ("If the ALJ finds that the claimant is not disabled under the five-step inquiry, then the

21   claimant is not entitled to benefits and there is no need to proceed with the analysis."). Here, the

22   ALJ considered both Plaintiff's DAA and additional impairments and concluded that Plaintiff was

23   not disabled at step five.

24           Accordingly, it made no sense to partially reject Dr. Wiebe's opinion on the ground that

25   Dr. Wiebe's "testing [did] not separate out the impact of [Plaintiff's alcohol use on her

26   functioning]." AR 26. Because the ALJ was only in the "first stage" of the analysis regarding

27   Plaintiff's disability, this reason for finding Dr. Wiebe's opinion "somewhat persuasive" was

28   legally insufficient. *See* SSR 13-2p, 2013 WL 621536, at *10 (An ALJ "will not continue to

United States District Court
Northern District of California

develop evidence of DAA if the evidence [the ALJ] obtain[s] about a claimant's other impairments is complete and shows that the claimant is not disabled.").  Again, such a reason would have come into play, if at all, only after the ALJ found that Plaintiff was disabled and during a "second stage" inquiry regarding the materiality of Plaintiff's DAA.  *See id.* at *6 (describing first and second stage evaluation processes); *Bustamante*, 262 F.3d at 955.  Accordingly, the ALJ erred in finding Dr. Wiebe's opinion "somewhat persuasive" for this reason.

### b.   Limitations to Plaintiff's Concentration, Memory, and Behavior

The Court addresses together the other two reasons the ALJ gave for partially rejecting Dr. Wiebe's opinion concerning Plaintiff's concentration, memory, and behavior:  the longitudinal medical record and Dr. Wiebe's testing.

As noted, Dr. Wiebe found that Plaintiff's attention and concentration were mildly to moderately impaired based on the results of several of the tests, including the MMSE, the Trail Making A, and the RBANS.  AR at 630-31.  She assessed Plaintiff with moderate to severe impairments in terms of her memory functioning, based on the RBANS and the MMSE tests.  AR at 630-31.

By contrast, the ALJ found that Plaintiff possessed moderate limitations in "understanding, remembering or applying information," "concentrating, persisting, or maintaining pace," and "[i]n interacting with others."  AR 23.  The ALJ then found that Dr. Wiebe's opinion otherwise was "contradicted by [Plaintiff's] longitudinal medical record showing that [Plaintiff] typically had intact concentration, memory, and behavior." AR 26.  In support, the ALJ noted that Dr. Wiebe's testing supported "mostly mild [or] moderate limits," but did not support the "severe [or] marked limitations."  AR 26.

Plaintiff generally argues that the ALJ ignored her anxiety, depression, and other mental health treatment records in partially rejecting Dr. Wiebe's opinion.  Plaintiff further contends that the mental health opinions in the record contradicted the ALJ's findings regarding her memory, concentration, and behavior and the ALJ's partial rejection of Dr. Wiebe's opinion based on those findings.  The Court addresses each argument below.

### i.   ALJ's Consideration of Plaintiff's Non-Physical Impairments

Plaintiff is correct that the ALJ cited almost exclusively to medical treatment and visits related to her *physical* ailments in support of the ALJ's singular statement that Dr. Wiebe's opinion was "contradicted by [Plaintiff's] longitudinal medical record showing that [Plaintiff] typically had intact concentration, memory, and behavior."  AR 26 (citing exhibits 9F7, 9F8, 9F10, 9F17, 9F23, 9F25, 9F29, 9F30, 12F25, 13F25); *see also, e.g.,* AR 540 (noting that "memory and cognition appear intact" during October 2018 visit regarding hepatitis C); AR 667 (noting that Plaintiff was "alert and cooperative" with "normal mood and affect," and "normal attention span and concentration" during June 2017 treatment for a cyst); AR 740 (noting that Plaintiff's "memory and cognition appear[ed] intact" during December 2018 visit for foot fungus and hepatitis C); *but see* AR 539 (September 2018 General Assistance evaluation discussing Plaintiff's PTSD and homelessness and noting that Plaintiff's "memory and cognition appear intact").

However, as described below and contrary to Plaintiff's argument otherwise, the ALJ repeatedly discussed and cited to evidence concerning Plaintiff's mental impairments throughout the overall decision, thus demonstrating very clearly that the ALJ indeed considered the record evidence concerning Plaintiff's non-physical impairments.  *See* Pl. Mot. Summ. J. at 8 (listing twenty-two record citations and asserting that the "ALJ's discussion of Dr. Wiebe's report ignores *every* citation in the record which indicates symptoms or a diagnosis of anxiety and depression"); *id.* (arguing that the "ALJ's reference to the 'longitudinal record' is thus wholly one-sided, as it ignores *all* evidence which supports Dr. Wiebe's findings"); Pl. Amended Reply at 8 (referencing "argument that the ALJ ignored every citation in the record as to [Plaintiff's] anxiety and depression").

In fact, review of the ALJ's decision, the Court Transcript Index, and the record reveals that several visit and treatment notes that Plaintiff asserts the ALJ failed to consider were indeed considered – and cited – by the ALJ below.  *See* Pl. Mot. Summ. J. at 8; *see, e.g.,* A.R. 959, 479 (records from December 27, 2017 visit to Dr. Wonsick of Ampla Health ("Ampla Health"), as cited by ALJ at AR 21). [6]  Indeed, the ALJ repeatedly referenced evidence pertaining to Plaintiff's

---

[6] There are several instances of duplicate visit records in the AR before this Court that may have caused the confusion.  *See, e.g.,* A.R. 959, 479 (records from December 27, 2017 visit to Dr.

non-physical impairments throughout each step of the decision.  *See, e.g.,* AR 21, 23, 27 (citing to AR 952, Plaintiff's January 13, 2018 visit to Dr. David Kilgore at Ampla Health for anxiety and depression) (ALJ stated that Plaintiff's "concentration was noted to be good with simple calculations," and that during the examination, Plaintiff had "fair memory for recall of recent and remote events"); AR 24 (citing to AR 395-97, Plaintiff's May 16, 2017 visit to Ampla Health to establish primary care) (ALJ noted that Plaintiff was "oriented to time, place, and person," and demonstrated "no depression, anxiety, or agitation"); AR 21 (citing AR 958-60, Plaintiff's December 26, 2017 follow-up visit with Dr. Chloe Wonsick at Ampla Health) (ALJ noted that Plaintiff's "scores on a depression health questionnaire showed only mild depression"); AR 25 (citing AR 451-52, July 21, 2017 visit with Dr. Kilgore at Ampla Health) (ALJ noted that Plaintiff "described extreme anxiety and panic attacks," that she "picked her hair when she was nervous and had migraines," and that the doctor recommended a trial of Luvox); AR 25 (citing AR 508-10, Plaintiff's August 29, 2017 visit to Dr. Wonsick at Ampla Health) (ALJ noted that Plaintiff was mildly depressed but "oriented to time, place, and person"); AR 25 (citing AR 766-67, Plaintiff's February 28, 2019 visit to Nurse Practitioner Patricia Purcell of the Ritter Center) (ALJ noted that Plaintiff "self-described as having depression for a long time and trying multiple antidepressants," that Plaintiff had had suicidal ideations in the past, and that Plaintiff "declined scheduling an appointment or drop in with the behavioral health team").

The ALJ's findings at each sequential step further evince that the ALJ considered Plaintiff's non-physical impairments.  The ALJ found that Plaintiff's anxiety constituted a severe impairment at step two.  AR 20.  The ALJ also acknowledged Plaintiff's depression and ADHD, finding both were nonsevere.  AR 21.  In support, the ALJ noted that Plaintiff suffered from mild depression that was "controlled by medication," and that the record did not support any ADHD symptoms.  AR 21.[7]

_____

Wonsick of Ampla Health, as cited by ALJ at AR 21; *see also* AR 950-53, 470-73 (records from January 31, 2018 to Dr. Kilgore at Ampla Health, as cited by ALJ at AR 21, 23, 27).  At the November 2019 hearing, the ALJ noted that Plaintiff's counsel had submitted multiple duplicate records below as well, which, according to the ALJ, were a "hindrance."  AR 45.

[7] Plaintiff did not challenge the ALJ's step two finding regarding the severity of her depression in

United States District Court
Northern District of California

In her RFC analysis, the ALJ also specifically rejected opinions from two state agency psychological consultants, Drs. Angeles Alvarez-Mullin and Joshua J. Boyd, that Plaintiff did not suffer from a severe mental impairment.  AR 26.  The ALJ found the state agency consultants' opinions "not persuasive" specifically because she found "support for severe mental impairments as well as corresponding limitations."  AR 26.  The ALJ further noted that the opinions of Drs. Alvarez-Mullin and Boyd were "inconsistent with [Plaintiff's] reports of mental symptoms and treatment in the record."  AR 26.  Notably, as discussed, the ALJ also assessed Plaintiff with moderate limitations in understanding, remembering, or applying information, and in concentrating, persisting, and maintaining pace.  AR. 23.[8]

Accordingly, the Court concludes that the ALJ did not, in fact, engage in a wholesale rejection of the evidence pertaining to Plaintiff's non-physical impairments as suggested by Plaintiff.

### ii.    Longitudinal Record and Dr. Wiebe's Testing

Turning now to the longitudinal record and Dr. Wiebe's testing, the Court concludes that the ALJ did not err in finding Dr. Wiebe's opinion partially persuasive.

Plaintiff did not receive any long-term mental health treatment from a psychiatrist or psychologist.[9]  Instead, Plaintiff received most of her mental healthcare and treatment – at least

---

her motion before this Court.

[8] In support, the ALJ cited to Plaintiff's own testimony and to the results of two examinations from January and September 2018.  AR 23; AR 950-52 (January 31, 2018 visit to Dr. David E. Kilgore at Ampla Health for anxiety and depression); AR 540 (General Assistance examination).

[9] Plaintiff suggests that psychologist Dr. Imme Staeffler constituted a "treating physician" because she saw Plaintiff twice – once in November 2018, and subsequently in May 2019.  AR 544, 776.  The Court notes that it is unlikely that Dr. Staeffler qualified as a "treating" source given the two visits.  Under the regulations, a "treating source" is an "acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 416.927(a)(2) (a physician may be considered a treating source if the claimant sees the source with a "frequency consistent with accepted medical practice for the type of treatment . . . required for your medical conditions"); *see also Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1036 (9th Cir. 2003).  However, the Court need not resolve whether Dr. Staeffler constituted a treating physician because the 2017 regulations eliminate the deference given to treating physicians for claims filed after March 27, 2017.  20 C.F.R. §§ 404.1520c (a), 416.920c(a).

United States District Court
Northern District of California

from May 2017 through April 2019 – from her primary care clinicians at Ampla Health and Ritter Center Health ("Ritter Center"), including from Drs. Kilgore (Ampla Health), Wonsick (Ampla Health), Krikoriantz (Ampla Health), Nurse Practitioner Joseph Charles (Ritter Center), Nurse Practitioner Tess Barbach (Ritter Center), and Nurse Practitioner Patricia Purcell (Ritter Center). *See* AR 395-97, 451-54, 508-10, 499-502, 503-07, 478-80, 950-52, 533-34, 538-39, 566, 572, 578-79, 584, 766-67, 774-75.  Because the Ritter Center and Ampla Health records constituted the bulk of Plaintiff's mental healthcare and treatment, the ALJ appropriately relied on them in her analysis at the requisite sequential steps.  AR 24, 25, 27, 28.

Dr. Imme Staeffler, a psychologist with Ritter Center's behavior health services, examined Plaintiff twice – first, in November 2018, and subsequently in May 2019.  AR 544, 776. Additionally, Dr. Wiebe and psychologist, Dr. Mindy Pardoll, conducted one-time examinations and evaluations of Plaintiff on November 6, 2019, and on January 28, 2015, respectively.  AR 1044-48.

Review of the longitudinal record confirms that the ALJ's determinations that Plaintiff possessed moderate limitations in her memory, concentration, and behavior were supported by substantial evidence.  For example, in July 2017, when Plaintiff was seen by Dr. Kilgore for anxiety, panic attacks, and depression, the doctor noted that Plaintiff's "[m]emory was good for recall of recent and remote events," and that her concentration and attention remained "fair."  AR 453.  Soon thereafter, in December 2017, Dr. Wonsick also noted that while Plaintiff suffered from mild depression, she was "oriented to time, place, and person."  AR 479.  The same was the case in July and September 2018, during Plaintiff's visits with Nurse Practitioners Purcell and Barbach.  AR 533-34 (noting that Plaintiff was "alert, oriented, [and] cognitive function [was] intact"); AR 538-39 (noting that "memory and cognition appear intact"); *but see* AR 776 (Plaintiff reported difficulty concentrating during May 2019 visit with Dr. Staeffler).

The moderate limitations were also substantially supported by examining psychologist Dr. Pardoll's opinion and by Dr. Wiebe's own testing.  *See* AR 1047 (Dr. Pardoll noted that Plaintiff was "able to remember what she had for breakfast [that] morning as well as events from [the day before]," "childhood memories," and several demographic and historical facts); AR 630 (Plaintiff

15

1   was "able to repeat a string of up to eight digits forward on the RBANS . . . [such that] [h]er score

2   on the attention index . . . was in the . . . average range" and her delayed memory was "in the

3   borderline. . . range"); *see also* AR 630 (Plaintiff's MMSE and Barona IQ scores placed her in the

4   "average range" and her performance on the MMSE suggested that she "was able to perform a

5   three-step command"); AR 631 (Plaintiff's performance on RBANS "suggests that [she] has some

6   ability to learn new information with multiple repetitions of that information, when provided with

7   memory cues"); *but see* AR 630 (Plaintiff's score on the immediate memory portion of the

8   RBANS test placed her in the "extremely low range").

9        Therefore, to the extent that Dr. Wiebe found additional marked – as opposed to moderate

10   – limitations based on her testing, those findings were inconsistent with the longitudinal record,

11   and the ALJ's discounting of those findings was supported by substantial evidence. *See* 20 C.F.R.

12   § 416.920c(c)(1) & (2).

13        In sum, the ALJ's determination that Dr. Wiebe's opinion was "somewhat persuasive" was

14   both supported by and consistent with the record, and the ALJ did not err in discounting portions

15   of Dr. Wiebe's opinion.

16        **3.    Dr. Mindy Pardoll**

17        On January 28, 2015, approximately two years prior to Plaintiff's amended onset date of

18   April 4, 2017, Dr. Mindy Pardoll, conducted a psychological evaluation. AR 1044-48. She

19   performed a mental status examination and interviewed Plaintiff, but unlike Dr. Wiebe, Dr.

20   Pardoll did not administer any formal cognitive or psychological tests. Dr. Pardoll diagnosed

21   Plaintiff with amphetamine use disorder, in partial remission, alcohol use disorder, cannabis use

22   disorder, PTSD, and major depressive disorder. AR 1048.

23        Regarding Plaintiff's cognition, Dr. Pardoll observed that Plaintiff "seemed oriented to

24   person, time, situation, and place." AR 1047. In terms of memory, Dr. Pardoll's examination

25   revealed that Plaintiff remembered the following: (1) "what she had for breakfast [that] morning

26   as well as events from [the day before];" (2) childhood memories and family member birthdays;

27   (3) geographic information and past and current political and historical figures; and (4) the

28   meaning of the age-old proverb, "don't cry over spilled milk." AR 1047. Dr. Pardoll found that,

United States District Court
Northern District of California

16

in terms of her "thought process," Plaintiff "seemed coherent," and "respond[ed] relevantly to questions." AR 1047. She further observed that Plaintiff "seemed friendly[,] cooperative[,] . . . and honest." AR 1047. Nevertheless, due to "recent behaviors," Dr. Pardoll opined that Plaintiff's judgment "seemed poor," and that "[h]er insight seemed inadequate." AR 1047.

Dr. Pardoll also found that Plaintiff had a "longstanding history of substance usage" that made "it . . . difficult to determine if her mental health symptoms are directly related to her current usage as well as withdrawal from Aderall." AR 1048. Dr. Pardoll noted that Plaintiff "would benefit from substance use and mental health counseling as well as a psychiatric evaluation for closer monitoring of her medications." AR 1048.

In seeming contrast to some of the above observations and findings, Dr. Pardoll ultimately concluded:

> [Plaintiff] seemed to have mental health symptoms and substance use disorder that interfere with her social and occupational functioning. [She] has difficulty retaining information. Her attention span seemed inadequate. It appears that her current mental health and substance use symptoms would interfere with her ability to perform simple repetitive tasks. It appears that she does not relate well to others. It seems that she might have difficulty socializing appropriately with other individuals in a working environment. It appears that she lacks distress tolerance skills as well as emotional regulation skills. It does not appear that she would be able to tolerate the stressors and pressures associated with a day[-]to[-]day work activity. Her judgment seemed poor and her insight seemed inadequate.

AR 1048.

The ALJ found Dr. Pardoll's assessment of Plaintiff only partially persuasive, noting that the longitudinal record contradicted Dr. Pardoll's assessment that Plaintiff had "inadequate attention and span," and that "[i]t was tough for Plaintiff to retain information." AR 27. The ALJ also asserted that that Dr. Pardoll's "assessment does not specifically address the claimant's alcohol abuse."[10] AR 27.

---

[10]In her discussion of Dr. Pardoll's opinion, the ALJ recounted that "Dr. Pardoll stated that [Plaintiff's] substance abuse interfered with [her] ability to perform simple, repetitive tasks, interact, and handle stress." AR 27. Plaintiff is correct that Dr. Pardoll was actually referring collectively to Plaintiff's "mental health *and* substance use symptoms." AR 1048 (emphasis added). However, this mischaracterization was harmless because the ALJ appropriately factored Plaintiff's DAA, along with Plaintiff's additional impairments, into her analysis at each

1      With respect to the second reason, as discussed above, the impact of Plaintiff's substance

2   abuse on her functional limitations would have been relevant only *after* and *if* the ALJ had

3   determined that Plaintiff was indeed disabled based on her combination of impairments.

4   Accordingly, Dr. Pardoll's failure to separately assess the impact of Plaintiff's alcohol abuse from

5   her combination of impairments does not constitute a legally sufficient rationale or reason for

6   rejecting in part Dr. Pardoll's opinion at this first stage of analysis. *See Bustamante*, 262 F.3d at

7   955 (9th Cir. 2001) (interpreting 20 C.F.R. §§ 404.1535, 416.935); SSR 13-2p, 2013 WL 621536,

8   at *1.

9      Nevertheless, the ALJ's first reason for the partial rejection of Dr. Pardoll's opinion was

10  supported by substantial evidence because Dr. Pardoll's opinion was not supported by the

11  longitudinal record for the same reasons as those set forth above with respect to Dr. Wiebe's

12  opinion.

13     Accordingly, the ALJ did not err in discounting Dr. Pardoll's opinion.

14  **4.      Dr. Imme Staeffler**

15     As noted above, Dr. Imme Staeffler, a psychologist with Ritter Center's behavior health

16  services, examined Plaintiff twice – first, in November 2018, and subsequently in May 2019.  AR

17  544, 776.  Plaintiff's first visit with Dr. Staeffler was discontinued after Plaintiff left, refusing to

18  sign the consent and confidentiality form.  AR 544.  During that visit, Dr. Staeffler noted that

19  Plaintiff was "labile" and suffered from "racing thoughts, flight of ideas, lose thought process,

20  [and] angry outbursts."  AR 544.  She also observed that Plaintiff had "disheveled dress and

21  groom," seemed to be "under the influence of a substance – not alcohol," and was "unable to

22  tolerate [one-on-one] contact for any prolonged period."  AR 544.  Dr. Staeffler permitted Plaintiff

23  to reschedule the visit to evaluate her fit for one-one-one therapy versus group therapy.  AR 544.

24     At Plaintiff's return visit in May 2019, Dr. Staeffler assessed Plaintiff with severe

25  depression and anxiety following Plaintiff's completion of the PHQ-9 questionnaire.  AR 776.

26

27  ─────────────

28  subsequent step of the requisite sequential disability determination, as required, and ultimately
determined that Plaintiff was not disabled at step five.

United States District Court
Northern District of California

1    She also diagnosed Plaintiff with PTSD based on her review of Plaintiff's medical records and her

2    examination that day.  AR 776.  Dr. Staeffler recommended that Plaintiff "establish a new primary

3    care provider" and noted that she "would benefit from psychotherapy."  AR 776.

4         Although the ALJ discussed generally Plaintiff's treatment with the Ritter Center in 2018-

5    2019, she did not specifically discuss her visits with Dr. Staeffler.  *See* AR 25.  Plaintiff argues the

6    ALJ erred in failing to do so because Dr. Staeffler diagnosed her with PTSD, a diagnosis that

7    Plaintiff claims was supported by the record.  In what appears to be an additional related claim for

8    relief, Plaintiff contends that the ALJ erred when she failed to evaluate her PTSD at any step of

9    the sequential evaluation process.  The Court addresses both issues below.

10                        **a. ALJ's Failure to Discuss Dr. Staeffler's Opinion**

11        In 2017, the SSA considerably revised its definition of "medical opinion" evidence.  *See*

12   *Ferreras-Matos v. Comm'r of Soc. Sec.*, No. 20 CIV07106 NSR-JCM, 2021 WL 7287630, at *13

13   (S.D.N.Y. Nov. 15, 2021).  The updated regulations define a "medical opinion" as "a statement

14   from a medical source about what [the claimant] can still do despite [their] impairment(s) and

15   whether [they] have one or more impairment-related limitations or restrictions" in their "ability to

16   perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying,

17   pushing, pulling or other physical functions . . . "  20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).  In

18   revising the definition of "medical opinion," the SSA recognized that "[d]iagnoses and prognoses

19   do not describe how an individual functions" and that although the SSA considers a claimant's

20   statements about his or her symptoms, "[a] more appropriate focus of medical opinions would be

21   perspectives from medical sources about claimants' functional abilities and limitations."  81 Fed.

22   Reg. at 62,562; *see also* 20 C.F.R. § 416.913(a)(2), (3).  Thus, a medical opinion must discuss

23   both a claimant's limitations and "what [the claimant] is still capable of doing" despite those

24   limitations.  *Michael H. v. Saul*, 5:20-CV-417 (MAD), 2021 WL 2358257, at *6 (N.D.N.Y. June

25   9, 2021).

26        Neither of Dr. Staeffler's visit notes constitute a "medical opinion" pursuant to the current

27   definition because they fail to discuss Plaintiff's functional abilities and limitations.  *See* 20 C.F.R.

28   § 404.1513(a)(2).  In suggesting otherwise, Plaintiff mistakes Dr. Staeffler's November 2018

United States District Court
Northern District of California

United States District Court
Northern District of California

observations regarding Plaintiff's demeanor and presentation for an opinion on functional limitation. That was not the case, though. Dr. Staeffler was unable to provide an opinion because Plaintiff was combative and appeared to be under the influence of a substance. AR 544. Instead, the appointment was rescheduled. *Id*.

Nor did Dr. Staeffler's May 2019 visit notes constitute a "medical opinion." Plaintiff suggests that Dr. Staeffler's recordation of her responses to the PHQ-9 questionnaire constituted an adequate discussion of her impairment-related limitations. The Court disagrees. Even if Dr. Staeffler's statements regarding Plaintiff's responses to the questionnaire could fairly be characterized as medical opinions, they nevertheless contain too little information about Plaintiff's functional abilities and limitations to be of use. *See, e.g., Marissa H. v. Kijakazi*, No. 2:20-cv-00343-DAO, 2021 WL 3742461, at *3-4 (D. Utah Aug. 23, 2021) (finding similar issues with a physician's statements). None of the statements give guidance to the ALJ about the extent of Plaintiff's specific impairments or how they affect her daily living or ability to work. Moreover, they fail to address what Plaintiff can do despite her limitations. For these reasons, the ALJ did not have a duty to specifically examine the persuasiveness of Dr. Staeffler's examination notes. *See* 20 C.F.R. § 404.1513(a)(2).

### b. ALJ's Consideration of PTSD

Plaintiff also argues that the ALJ failed to "consider, discuss, articulate, or otherwise evaluate" her history of PTSD, and that this failure to consider her PTSD at any step of the process constituted error. Pl. Mot. Summ. J. at 12. The Commissioner did not respond to this argument. For the reasons that follow, the Court concludes that remand is required for the ALJ to explicitly consider the impact of Plaintiff's PTSD on her RFC and the ultimate disability determination.

In addition to Dr. Staeffler's PTSD diagnosis, discussed above, the record contains multiple PTSD diagnoses from several other clinicians and a social worker throughout the period from May 2017 through May 2019. *See* AR 354 (May 2017 diagnosis by social worker at a community health clinic in North Carolina); AR 395 (May 16, 2017 diagnosis by Dr. Wonsick from Ampla Health); AR 950 (January 31, 2018 diagnosis by Dr. Kilgore at Ritter Center); AR 538-39 (September 2018 diagnosis by Nurse Practitioner Barbach); AR 578-79 (February 2019

diagnosis by Nurse Practitioner Purcell).

Unlike Plaintiff's other cognitive and mental health impairments – including depression, anxiety, and ADHD – the ALJ failed to mention Plaintiff's PTSD at step two of the sequential process and therefore did not make a finding regarding its severity. *See* AR 21-22. Subsequently and without elaboration, the ALJ acknowledged Plaintiff's PTSD diagnosis, but rejected Plaintiff's reports of "overpowering PTSD." *See* AR 24 (discussing Plaintiff's 2017 Ampla Health records from 2017, and noting that Plaintiff had a "history of anxiety, PTSD, and ADHD"); AR 28 (finding that [Plaintiff's] "reports that she has overpowering PTSD . . . [were] not supported"). Other than the two fleeting mentions of PTSD, the ALJ failed to explain more generally how – and if – Plaintiff's PTSD diagnoses factored into the disability determination.

At step two of the sequential analysis, the ALJ considers whether a claimant suffers from a "severe" impairment, or combination of impairments. 20 C.F.R. § 404.1520. In practice, "the step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen*, 80 F.3d 1273, 1290 (9th Cir. 1996); *see also Simpson v. Berryhill*, No. 17-CV-05491-BLF, 2019 WL 1003355, at *3–4 (N.D. Cal. Mar. 1, 2019) (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1048 (9th Cir. 2017) ("Step two is merely a threshold determination meant to screen out weak claims."). Because step two was decided in Plaintiff's favor, and the ALJ went on to consider steps three through five, Plaintiff could not have been prejudiced by any error in the ALJ's determination as to which of Plaintiff's claimed impairments were severe. *See Simpson*, 2019 WL 1003355, at *3-4 (citing *Buck*, 869 F.3d at 1049) (where step two was decided in the claimant's favor, "[h]e could not possibly have been prejudiced" and "[a]ny alleged error [was] therefore harmless").

Accordingly, the "real thrust" of Plaintiff's argument is that the ALJ failed to consider her PTSD when deciding her RFC. *Simpson*, 2019 WL 1003355, at *4. In evaluating a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." *Knepper v. Berryhill*, No. 17-CV-04838-VKD, 2019 WL 1440904, at *20 (N.D. Cal. Mar. 31, 2019) (quoting *Buck*, 869 F.3d at 1049); *see also Simpson*, 2019 WL 1003355, at *4. "The RFC therefore should be exactly the same regardless of whether certain impairments are considered 'severe' or not." *Knepper,* 2019 WL 1440904, at *20

1    (quoting *Buck*, 869 F.3d at 1049).

2         The Court addresses the ALJ's consideration of Plaintiff's PTSD in conjunction with its

3    discussion of her RFC below and concludes that remand on this issue is warranted.

4    **C.        Assessment of Plaintiff's RFC**

5         In a claim related to the above claims, Plaintiff argues that the ALJ failed to properly

6    assess her RFC based on the record evidence, including the medical opinions of Drs. Wiebe,

7    Pardoll, and Staeffler, and the PTSD diagnoses and findings that Plaintiff argues were erroneously

8    rejected or ignored.  Plaintiff contends that the erroneously discounted evidence would have

9    supported a finding that she was unable to perform simple routine tasks.

10        As set forth above, the Court concludes that substantial evidence supports the ALJ's

11   decision to afford only partial weight to the opinions of Drs. Wiebe and Pardoll.  Additionally,

12   because Dr. Staeffler's records do not constitute a "medical opinions" under  20 C.F.R. §

13   404.1513(a)(2), the ALJ did not have a duty to specifically examine the persuasiveness of Dr.

14   Staeffler's examination notes.

15        However, the evidence regarding Plaintiff's PTSD presents a different story.  An ALJ is

16   required to assess a claimant's RFC "based on all the relevant evidence in [the] case record," 20

17   C.F.R. § 416.945(a)(1), including evidence regarding impairments that are not severe.  *Buck*, 869

18   F.3d at 1049.  The RFC assessment must "[c]ontain a thorough discussion and analysis of the

19   objective medical and other evidence, including the individual's complaints of pain and other

20   symptoms and the adjudicator's personal observations, if appropriate."  *Laborin v. Berryhill*, 867

21   F.3d 1151, 1152 (9th Cir. 2017) (citations omitted).  Here, the ALJ's RFC assessment failed to

22   properly account for Plaintiff's well-documented diagnoses of PTSD and its impact on her ability

23   to work.  For this reason, the RFC determination was not supported by substantial evidence, and

24   the ALJ erred.

25   **D.        Remedy**

26        The Social Security Act permits courts to affirm, modify, or reverse the Commissioner's

27   decision "with or without remanding the case for a rehearing." 42 U.S.C. § 405(g); *see also*

28   *Garrison*, 759 F.3d at 1019. "[W]here the record has been developed fully and further

administrative proceedings would serve no useful purpose, the district court should remand for an immediate award of benefits." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004).  However, "[r]emand for further proceedings is appropriate where there are outstanding issues that must be resolved before a disability determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." *Luther v. Berryhill*, 891 F.3d 872, 877–78 (9th Cir. 2018) (citations omitted).

Here, the ALJ failed to fully and fairly develop the record when evaluating Plaintiff's disability claim, but it is not clear that the ALJ would be required to find Plaintiff disabled. Accordingly, remand for further proceedings is appropriate.  On remand, the ALJ is required to address Plaintiff's PTSD and, specifically, how the impairment impacts Plaintiff's RFC and her ability to work at step five of the sequential analysis.

## VI.   CONCLUSION

For the reasons stated above, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiff's motion, **DENIES** Defendant's cross-motion, and **REVERSES** the ALJ's decision. This matter is **REMANDED** for further administrative proceedings consistent with this order. The Court shall enter a separate judgment, after which the Clerk of Court shall terminate the case.

**IT IS SO ORDERED.**

Dated: June 14, 2022

THOMAS S. HIXSON
United States Magistrate Judge